IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARIA COTON-STEPHENS and TYRONE STEPHENS, <br><br> Plaintiffs, <br><br> vs. <br><br> CONAGRA FOODS, INC., a Delaware Corporation, <br><br> Defendant. | No. 08-CV-4402 <br><br> Hon. Judge Marvin E. Aspen <br> Magistrate Judge Brown |

## ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

Defendant, CONAGRA FOODS, INC. ("ConAgra"), by and through counsel, hereby responds to Plaintiffs' Complaint (the "Complaint"), as follows:

1. MARIA COTON-STEPHENS (herein "Maria") contracted Salmonella from eating ConAgra's contaminated peanut butter, which was all manufactured and packaged in a single location — ConAgra's plant in Sylvester, Georgia. At all relevant times, Maria was and is a resident of the state of Illinois and is the wife of Plaintiff TYRONE STEPHENS (herein "Tyrone")

**ANSWER:** ConAgra denies the first sentence of Paragraph 1 of the Complaint, except admits that ConAgra does manufacture and package certain peanut butter in a plant in Sylvester, Georgia. ConAgra lacks knowledge or information sufficient to admit or deny the allegations contained in the second sentence of Paragraph 1 of the Complaint and, therefore, denies the same. Except as admitted, the allegations of Paragraph 1 of the Complaint are denied. ConAgra specifically denies that the peanut butter at issue was "contaminated."

2. On February 14, 2007, the Food and Drug Administration issued a national warning advising people not to eat from certain jars of Peter Pan brand or Great Value brand peanut butter due to a risk of contamination with Salmonella.

\6483820.1

**ANSWER:** ConAgra admits that on February 14, 2007, the Food and Drug Administration issued a press release, the specific terms of which are evident in that release. ConAgra denies that the allegations in Paragraph 2 of the Complaint accurately and comprehensively restate the terms of that release and denies all allegations in Paragraph 2 of the Complaint that are inconsistent with that release.

3. At the same time it issued its warning to consumers, the FDA announced a recall of ConAgra's implicated peanut butter.

**ANSWER:** ConAgra admits that on February 14, 2007, the Food and Drug Administration issued a press release, the specific terms of which are evident in that release. ConAgra denies that the allegations in Paragraph 3 of the Complaint accurately and comprehensively restate the terms of that release and denies all allegations in Paragraph 3 of the Complaint that are inconsistent with that release.

4. Salmonella is a bacterium that can cause fever, diarrhea, abdominal cramps, and, in a person with poor underlying health or weakened immune systems, life-threatening infections.

**ANSWER:** ConAgra admits that Salmonella can cause fever, diarrhea, and cramps, that these symptoms usually resolve completely, and that variables such as the health and age of the host can sometimes affect the nature and severity of the symptoms. ConAgra denies the remaining allegations of Paragraph 4 of the Complaint.

5. Salmonella lives in the intestinal tracts of warm blooded animals, such as rats and birds, and is found in their feces.

**ANSWER:** ConAgra denies the allegations of Paragraph 5 of the Complaint, except admits that Salmonella is a bacterium that can sometimes live in human or warm-blooded intestinal tracts. Except as admitted, the allegations of Paragraph 5 of the Complaint are denied.

6. The FDA's February 14, 2007 warning was based on an epidemiological study by the Centers for Disease Control and Prevention (CDC), and state and local health agencies, which linked, at that time, 288 cases of food-borne illness in 39 states to consumption of ConAgra's peanut butter.

**ANSWER:** ConAgra admits that on February 14, 2007, the Food and Drug Administration issued a press release, the specific terms of which are evident in that release. ConAgra denies that the allegations in Paragraph 6 of the Complaint accurately and comprehensively restate the terms of that release and denies all allegations in Paragraph 6 of the Complaint that are inconsistent with that release.

7. On February 21, 2007, the FDA confirmed the presence of Salmonella in opened jars of Peter Pan and Great Value peanut butter obtained from infected persons. Over 329 cases of people infected with Salmonella had been reported to the CDC, with at least 51 requiring hospitalization.

**ANSWER:** ConAgra lacks knowledge or information sufficient to admit or deny the allegations contained in Paragraph 7 of the Complaint and, therefore, denies the same.

## PARTIES

8. Plaintiffs are citizens of Libertyville, Illinois.

**ANSWER:** ConAgra lacks knowledge or information sufficient to admit or deny the allegations contained in Paragraph 8 of the Complaint and, therefore, denies the same.

9. Defendant ConAgra, Inc. is a corporation organized under the laws of the State of Delaware that has its corporate headquarters located in Omaha, Nebraska.

**ANSWER:** ConAgra admits the allegations contained in Paragraph 9 of the Complaint.

10. At all times relevant, ConAgra manufactured, advertised, marketed, distributed, and sold Peter Pan and Great Value peanut butter throughout the United States, including Illinois.

**ANSWER:** ConAgra admits that it manufactured and distributed Peter Pan and certain Great Value peanut butter for sale to retail stores throughout the United States, including the State of Illinois. Except as admitted, ConAgra denies the allegations of Paragraph 10 of the Complaint.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the named plaintiffs and the defendant are of diverse citizenship and the amount in controversy, exclusive of costs and interest, exceeds $75,000.00.

**ANSWER:** ConAgra states that the allegations of Paragraph 11 state legal conclusions to which no response is required, but to the extent a response is required, ConAgra states that it lacks knowledge or information sufficient to form a belief as to the jurisdictional allegations in this paragraph and therefore denies same. ConAgra denies that Plaintiffs are entitled to damages of any nature whatsoever. ConAgra denies all remaining allegations contained in Paragraph 11 of the Complaint.

12. This Court has general personal jurisdiction over ConAgra because it conducted systematic and continuous business activities in and throughout the State of Illinois by advertising, marketing, distributing, and selling peanut butter to the plaintiffs in Illinois and elsewhere.

**ANSWER:** ConAgra admits that it is registered to do business in the State of Illinois and certain of its products, including peanut butter, are sold in the State of Illinois. Except as admitted, ConAgra denies the allegations of Paragraph 12 of the Complaint.

13. Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(a) because ConAgra conducts business in Illinois, and within this judicial district, within the meaning of 28 U.S.C. § 1391(a) as defined in § 1391(c), and because a substantial part of the events giving rise to this claim occurred in Illinois, including Maria's consumption of ConAgra's contaminated peanut butter, her resulting infection with Salmonella and renal failure.

**ANSWER:** The allegations in Paragraph 13 constitute legal conclusions to which no response is required. To the extent that a response is required, ConAgra denies the allegations of Paragraph 13 of the Complaint, except admits that certain of its products are sold in the State of Illinois and that venue is properly laid. ConAgra specifically denies that peanut butter consumed by Plaintiffs was "contaminated", and specifically denies that their consumption of peanut butter caused their injuries.

## FACTUAL BACKGROUND

\6483820.1

14. Plaintiffs reallege and incorporate herein, as if set forth in full each and every allegation contained in the preceding paragraphs and allege:

**ANSWER:** ConAgra reincorporates its answers to the preceding paragraphs as if fully set forth herein.

15. Salmonella is a bacterium that lives in the intestinal tracts of humans and other animals. Salmonella bacteria are usually transmitted to humans by eating foods contaminated with feces of animals such as birds or rats. Food may also become contaminated by the unwashed hands of an infected food handler. Foods contaminated with Salmonella usually look and smell normal.

**ANSWER:** ConAgra denies the allegations of Paragraph 15 of the Complaint, except admits that Salmonella is a bacterium that can sometimes live in human or warm-blooded intestinal tracts, and that Salmonella can be transmitted to humans under certain circumstances through the consumption of contaminated foods.

16. Between 12 and 72 hours after infection with Salmonella, most people develop nausea, diarrhea, fever, fatigue, muscle pain and abdominal cramps. The illness usually lasts 4 to 7 days.

**ANSWER:** ConAgra denies the allegations contained in Paragraph 16 of the Complaint.

17. However, some infected people develop diarrhea so severe that they need to be hospitalized.

**ANSWER:** ConAgra denies the allegations of Paragraph 17 of the Complaint, except admits that persons with severe diarrhea may require rehydration, which in rare instances can be accomplished through intravenous fluids.

18. In some infected people, the Salmonella infection spreads from the intestines to the blood stream, and then to other body sites and can cause death, unless the person is treated promptly with antibiotics. The elderly, infants, and those with impaired immune systems are more likely to have a severe illness.

**ANSWER:** ConAgra lacks knowledge or information sufficient to admit or deny the allegations contained in the first sentence of Paragraph 18 of the Complaint and, therefore, denies the same. Responding to the allegations of the second sentence of Paragraph 18 of the

Complaint, ConAgra admits that variables such as the health and age of the host can sometimes affect the nature and severity of the symptoms. Except as admitted, ConAgra denies the allegations contained in Paragraph 18 of the Complaint.

19. On February 14, 2007, the Food and Drug Administration ("FDA") issued a national warning advising people not to eat from jars of Peter Pan brand or Great Value brand peanut butter bearing a product code beginning with "2111" due to a risk of contamination with Salmonella.

**ANSWER:** ConAgra admits that on February 14, 2007, the Food and Drug Administration issued a press release, the specific terms of which are evident in that release. ConAgra denies that the allegations in Paragraph 19 of the Complaint accurately and comprehensively restate the terms of that release and denies all allegations in Paragraph 19 of the Complaint that are inconsistent with that release. ConAgra specifically denies that the numbers "2111" refer to any specific lot or batch.

20. The FDA's warning was based on a recent epidemiological study by the Centers for Disease Control and Prevention (CDC), the states and local health agencies, which linked 288 cases of food-borne illness in 39 states to consumption of varying types of Peter Pan peanut butter.

**ANSWER:** ConAgra admits that on February 14, 2007, the Food and Drug Administration issued a press release, the specific terms of which are evident in that release. ConAgra denies that the allegations in Paragraph 20 of the Complaint accurately and comprehensively restate the terms of that release and denies all allegations in Paragraph 20 of the Complaint that are inconsistent with that release.

21. On February 21, 2007, the FDA confirmed the presence of Salmonella in opened jars of Peter Pan and Great Value peanut butter obtained from infected persons.

**ANSWER:** ConAgra lacks knowledge or information sufficient to admit or deny the allegations contained in Paragraph 21 of the Complaint and, therefore, denies the same.

22. Over 329 cases of people infected with Salmonella had been reported to the CDC, with at least 51 requiring hospitalization.

**ANSWER:** ConAgra lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 22 of the Complaint and, therefore, denies the same.

23. Sometime in early September of 2006, Maria consumed Peter Pan peanut butter carrying a product code beginning with "2111"on the jar lid.

**ANSWER:** ConAgra lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 23 of the Complaint and, therefore, denies the same.

24. Maria became violently ill with diarrhea and vomiting and was taken to the emergency room at Condell Medical Center in Libertyville, Illinois in September of 2006.

**ANSWER:** ConAgra lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 24 of the Complaint and, therefore, denies the same. ConAgra specifically denies that Plaintiff's alleged illness was a result of consuming Peter Pan brand peanut butter.

25. Maria went underwent extensive treatment and was diagnosis [sic] with renal failure, among other illnesses at Condell Medical Center.

**ANSWER:** ConAgra lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 25 of the Complaint and, therefore, denies the same. ConAgra specifically denies that Plaintiff's alleged treatment and diagnosis of renal failure was a result of consuming Peter Pan brand peanut butter.

26. Plaintiffs have suffered severe injuries and damages of a personal and pecuniary nature as a result of Maria's Salmonella poisoning after consuming Peter Pan peanut butter carrying a product code beginning with "2111"on the jar lid.

**ANSWER:** ConAgra denies the allegations of Paragraph 26 of the Complaint. Furthermore, ConAgra specifically denies that Plaintiffs are entitled to damages of any nature whatsoever.

**COUNT I**
**Negligence**

27. The Complaint does not contain a Paragraph 27.

**ANSWER:** The Complaint does not contain a Paragraph 27 and, as a result, requires no response.

28. Plaintiffs re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

**ANSWER:** ConAgra reincorporates its answers to the preceding paragraphs as if fully set forth herein.

29. At all times relevant, ConAgra had a duty to exercise reasonable care in the manufacturing, packaging, distribution and sale of its peanut butter, including the duty to ensure that its peanut butter was not unreasonably dangerous to consumers due to contamination with Salmonella bacteria.

**ANSWER:** ConAgra states that the allegations of Paragraph 29 state legal conclusions to which no response is required. To the extent a response is required, ConAgra denies the allegations of Paragraph 29 of the Complaint.

30. ConAgra knew or in the exercise of reasonable care should have known that if its peanut butter was not properly manufactured, packaged, distributed and sold, such peanut butter was likely to be contaminated with Salmonella and therefore unreasonably dangerous to consumers.

**ANSWER:** ConAgra denies the allegations of Paragraph 30 of the Complaint.

31. ConAgra breached its duties by failing to exercise ordinary care in the manufacturing, packaging, distribution and sale of its peanut butter, and manufactured, distributed and sold peanut butter contaminated with Salmonella.

**ANSWER:** ConAgra denies the allegations of Paragraph 31 of the Complaint.

32. As a direct and proximate cause of ConAgra's negligence, plaintiffs have suffered the damages and injuries described herein.

**ANSWER:** ConAgra denies the allegations of Paragraph 32 of the Complaint. ConAgra specifically denies that Plaintiffs are entitled to damages of any nature whatsoever.

## COUNT II
### Strict Liability

33. Plaintiffs re-allege and incorporate herein, as if set forth herein, each and every allegation contained in the preceding paragraphs and further allege:

**ANSWER:** ConAgra reincorporates its answers to the preceding paragraphs as if fully set forth herein.

34. ConAgra is engaged in the business of manufacturing, packaging, distributing and selling products to consumers, including Peter Pan brand peanut butter and Great Value brand peanut butter.

**ANSWER:** ConAgra admits that it manufactures, packages and distributes Peter Pan brand peanut butter and certain Great Value brand peanut butter for sale to certain retail stores. Except as admitted, ConAgra denies the allegations of Paragraph 34 of the Complaint.

35. ConAgra manufactured and placed in the stream of commerce the jars of Peter Pan brand peanut butter and the jars of Great Value brand peanut butter carrying a product code beginning with "2111" on the jar lid.

**ANSWER:** ConAgra admits that it manufactures and distributes Peter Pan brand peanut butter and certain Great Value brand peanut butter with a product code beginning with "2111". Except as admitted, ConAgra denies the allegations of Paragraph 35 of the Complaint.

36. The peanut butter manufactured, packaged, distributed and sold by ConAgra is a "ready-to-eat" product that is intended and expected to be eaten without being first cooked or heated.

**ANSWER:** ConAgra admits the allegations of Paragraph 36 of Plaintiffs' Complaint.

37. At the time they left ConAgra's control and were placed in interstate commerce, jars of Peter Pan brand and jars of Great Value brand peanut butter bearing the product code 2111 on the jar lid were defective and unreasonably dangerous because they were contaminated with Salmonella and therefore were not safe for handling and consumption, the intended and expected use for which they were sold.

**ANSWER:** ConAgra denies the allegations of Paragraph 37 of the Complaint.

38. The jars of Peter Pan brand and the jars Great Value brand peanut butter bearing the product code "2111" on the jar lid were expected to and did reach the Plaintiffs without a substantial change in the condition in which they were sold.

**ANSWER:** ConAgra states that the allegations of Paragraph 38 state legal conclusions to which no response is required. To the extent a response is required, ConAgra denies the allegations of Paragraph 38 of the Complaint.

\6483820.1

39. Plaintiffs could not by the exercise of reasonable care have discovered that the peanut butter Maria consumed was contaminated with Salmonella and hence it was unreasonably dangerous.

**ANSWER:** ConAgra denies the allegations of Paragraph 39 of the Complaint. ConAgra specifically denies that the peanut butter consumed was contaminated with Salmonella.

40. The defective and unreasonably dangerous condition (Salmonella contamination) of the jars of Peter Pan brand and the jars of Great Value brand peanut butter bearing the product code "2111" on the jar lid was the direct and proximate cause of the damages and injuries suffered by Plaintiffs described herein.

**ANSWER:** ConAgra denies the allegations of Paragraph 40 of the Complaint. ConAgra specifically denies that the Peter Pan peanut butter at issue in this case was contaminated and that Plaintiffs' damages and injuries, if any, were caused as a result of consuming Peter Pan peanut butter.

ConAgra denies that Plaintiffs are entitled to damages or any other relief requested in the WHEREFORE clause following Paragraph 40 of the Complaint.

### COUNT III – Loss of Consortium

41. Plaintiffs re-allege and incorporate herein, as if set forth herein, each and every allegation contained in the preceding paragraphs and further allege.

**ANSWER:** ConAgra reincorporates its answers to the preceding paragraphs as if fully set forth herein.

42. As a direct and proximate result of ConAgra's acts and omissions, Maria became severely ill after suffering from Salmonella poisoning.

**ANSWER:** ConAgra denies the allegations of Paragraph 42 of the Complaint.

43. As a direct and proximate result of the acts and omissions of ConAgra, Maria have [sic] suffered severe injuries and damages of a personal and pecuniary nature as a result of Maria's Salmonella poisoning after consuming Peter Pan peanut butter carrying a product code beginning with "2111" the jar lid, having to undergo extensive treatment and was diagnosis with renal failure, among other illnesses, and sustained other injuries and damages of a personal and pecuniary nature.

\6483820.1

**ANSWER:** ConAgra denies the allegations of Paragraph 43 of the Complaint. ConAgra specifically denies that Plaintiffs are entitled to damages of any nature whatsoever.

44. As a direct and proximate result of ConAgra's acts and omissions and Maria's proximately resulting injuries, Tyrone has been deprived of a portion of Maria's love, companionship, society, consortium, and/or services which she had ably provided prior thereto.

**ANSWER:** ConAgra denies the allegations of Paragraph 44 of the Complaint. ConAgra specifically denies that Plaintiffs' alleged injuries, if and, were the result of consuming Peter Pan brand peanut butter.

ConAgra denies that Plaintiffs are entitled to damages or any other relief requested in the WHEREFORE clause following Paragraph 44 of Plaintiffs' Complaint.

### AFFIRMATIVE DEFENSES

Defendant ConAgra Foods, Inc., by counsel, reserves the right to rely upon the following affirmative defenses to the claims asserted in Plaintiffs' Complaint to the extent supported by evidence later developed or facts later learned, without now assuming the burden of proof on any such defense that would otherwise rest on Plaintiff and with the reservation of its right to amend or supplement its responses to Plaintiffs' Complaint, as well as its affirmative defenses, as information is gathered through discovery. All allegations not specifically admitted herein are denied:

1. Plaintiffs' cause of action fails in whole or part to state a claim upon which relief can be granted.

2. Plaintiffs' Complaint is pre-empted by applicable state or federal laws.

3. ConAgra denies that Plaintiff was injured to the extent alleged and calls for strict proof thereof.

4. Plaintiffs' illnesses, if any, were the result of natural health processes and would have occurred just as they did irrespective of ConAgra's actions or conduct.

11

\6483820.1

5.  Plaintiffs' alleged injuries were caused by the act or omission of an individual or entity over whom or which ConAgra exercised no control.

6.  Plaintiffs' alleged injuries were caused by an intervening or superseding cause.

7.  Plaintiffs' alleged damages were the result, in part, of pre-existing injuries or conditions.

8.  The negligence of others, over whom ConAgra exercises no control, was either the sole proximate cause of Plaintiffs' alleged injuries or was a proximate cause of Plaintiffs' injuries.

9.  The negligence of Plaintiff and his failure to use that degree of care as would have been used by ordinary, reasonable, and prudent persons under the same or similar circumstances was a, or the sole, proximate cause of his injuries.

10. Defendant's product conformed to the state of the art for the design and manufacture of similar products at all times relevant to this litigation.

11. Defendant's product was not unreasonably dangerous.

12. To the extent Plaintiffs' negligence in one or more ways stated exceeds Fifty Percent (50%), the Plaintiff is barred from any recovery from Defendant. Alternatively, if Plaintiffs' comparative negligence is Fifty Percent (50%) or less of the combined fault of all tortfeasors, the Plaintiffs' recovery must be reduced by his own percentage of fault. 735 ILCS § 5/2-1116.

13. Some or all of Plaintiffs' claims are not properly before this Court because of the doctrine of primary jurisdiction. This Court should abstain and defer to the jurisdiction of public agencies, including but not limited to, the U.S. Food and Drug Administration and applicable state agencies.

\6483820.1

14.     At all material times, Defendant acted with due care and complied with applicable statutory, regulatory, and common law requirements. Accordingly, some or all of the Plaintiffs' claims are or may be barred by Defendant's compliance with all applicable state, federal, and local laws and regulations.

15.     Plaintiffs are estopped to pursue further relief in this action against Defendant to the extent the Plaintiff proceeds with prosecution of any other class, consolidated or individual action in any jurisdiction against Defendant, including, but not limited to, those certain actions instituted prior or subsequent to this action.

16.     Any claim advanced as a warranty claim for which the Plaintiffs failed to give ConAgra timely and reasonable notice as required by law is barred.

17.     Plaintiffs are estopped to pursue further relief in this action against ConAgra to the extent Plaintiffs proceed with prosecution of any other class, consolidated or individual action in any jurisdiction against ConAgra, including but not limited to those certain actions instituted prior or subsequent to this action.

18.     Plaintiffs' claims are barred by this jurisdiction's cap on punitive damages.

19.     Any award of punitive damages against Defendant in this matter based on Defendant's conduct outside of this jurisdiction would impose unreasonable state limitations on interstate commerce in violation of the Commerce Clause of the United States Constitution and would be in violation of the United States' Supreme Court's holding in *State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 408, 155 L. Ed. 2d 585, 123 S. Ct. 1513 (2003).

20.     Any award of punitive damages against Defendant in this matter would violate Defendant's guarantees of due process, equal protection, property and protection against

\6483820.1

excessive fines under the Fourteenth Amendment to the United States Constitution and under applicable law of this jurisdiction.

21. Punitive damages may not be awarded:

a) Without proof of every element beyond a reasonable doubt, or in the alternate without proof by clear convincing evidence;

b) Without bifurcating the trial of all punitive issues, including punitive liability;

c) With no limits, including the maximum amount that a jury may impose in this jurisdiction;

d) With no limits, including the constitutional prohibition against punitive damages awards being greater than a single-digit multiplier of any compensatory damages award, *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 155 L. Ed. 2d 585, 123 S. Ct. 1513 (2003);

e) Which improperly compensates Plaintiffs for elements of damage not otherwise recognized under the laws of this jurisdiction;

f) Without standards or sufficient clarity for determining the appropriateness of appropriate size of the award;

g) Without consideration of the three constitutional guideposts of reprehensibility, ratio, and civil penalties, *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 155 L. Ed. 2d 585, 123 S. Ct. 1513 (2003);

h) Without appropriate instructions on the limits of punitive damages imposed by the applicable principles of deterrence and punishment;

i) Under a vague and arbitrary standard that does not define the necessary conduct or mental state required for punitive damages; and

14

\6483820.1

j) Without judicial review on the basis of objective standards, including the three constitutional guideposts of reprehensibility, ratio, and civil penalties, *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 155 L. Ed. 2d 585, 123 S. Ct. 1513 (2003).

22. Any award of punitive damages against Defendant in this matter would violate Defendant's guarantees of due process of protection against double jeopardy, excessive fines and multiple punishments under the Fifth and Fourteenth Amendments to the United States Constitution and under applicable law of this jurisdiction, since Defendant is subject to multiple punitive awards for the same alleged wrong or conduct.

23. Any award of punitive damages against Defendant in the matter based upon a single course of conduct or enterprise for which punitive damages have already been imposed would constitute unreasonable state limitations on interstate commerce in violation of the Commerce Clause of the United States Constitution.

24. Since punitive damages are criminal in nature, any award of such damages against Defendant in this matter would deny Defendant the protection afforded defendants in criminal cases, including protection against unreasonable searches and seizures, double jeopardy, self-incrimination, the right to confront adverse witnesses, a speedy trial and the effective assistance of counsel as guaranteed under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and under applicable law of this jurisdiction.

25. Plaintiffs' claim for punitive damages is barred to the extent Plaintiffs seek to impose punitive damages on Defendant for conduct allegedly directed toward non-parties.

26. Any calculation or award of punitive damages against Defendant ConAgra based in whole or in part upon ConAgra's alleged conduct toward non-parties is unconstitutional and

...

constitutes a taking of ConAgra's property without due process. *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007).

27.     Defendant reserves the right to raise any additional defenses as may be revealed by discovery or investigation in this matter.

WHEREFORE, ConAgra Foods, Inc. respectfully requests that Plaintiffs' Complaint be dismissed in its entirety, on the merits, and with prejudice; that Plaintiffs be denied the relief from Defendant which they request in their Complaint; that ConAgra be awarded its reasonable attorneys' fees and costs incurred in defending against this matter; and any other relief this Honorable Court deems just and equitable.

Dated:  August 27, 2008                CONAGRA FOODS, INC.

                                       By: ___/s/ John D. Bonini_____
                                              One of its Attorneys

John D. Bonini (6289090)
McGuireWoods LLP
77 West Wacker Drive, Ste 4100
Chicago, IL 60601
Telephone:  312/849-8186

\6483820.1

## CERTIFICATE OF SERVICE

I, John D. Bonini, certify that on August 27, 2008, I electronically filed the foregoing **Answer to Complaint and Affirmative Defenses**, with the Clerk of the Court using the ECF system which will send notification of such filings to the following:

>Adrian P. Smith (adrian@kenallenlaw.com)
>KENNETH J. ALLEN & ASSOCIATES
>1109 Glendale Blvd.
>Valparaiso, IN  46383
>Tel: (219) 465-6292

>By: /s/ John D. Bonini
>John D. Bonini
>MCGUIREWOODS LLP
>77 West Wacker Drive – Suite 4100
>Chicago, Illinois  60601
>Telephone:  (312) 849-8100
>Fax:  (312) 849-3690
>jbonini@mcguirewoods.com

\6483820.1